UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

TRAVIS LEE,

    Plaintiff,

v.

SERGEANT TODD HILL, SERGEANT
TIMOTHY WILLIS, DEPUTY JASON
RUPE, DEPUTY ERIC HOISINGTON,
DEPUTY RICHARD HOWE, DEPUTY
DARIUS ZAJAC, DEPUTY STEVEN
CARTER, SERGEANT LESLIE WHITFIELD,
DEPUTY BRYAN PASINI, DEPUTY JEREMY
BABIAK, DEPUTY JOSEPH EDDY, GREG
SMITH, OAKLAND COUNTY SHERIFF MICHAEL
BOUCHARD, CITY OF PONTIAC, THE COUNTY
OF OAKLAND,

    Defendants.
_____/

Case No. 2:12-cv-10486

Hon. Patrick J. Duggan
Mag. Judge Laurie J. Michelson

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT[15]**

This is a prisoner civil rights case brought pursuant to 42 U.S.C. § 1983 in which pro se Plaintiff Travis Lee ("Plaintiff") alleges that Defendants Eric Hoisington ("Hoisington") and Jason Rupe ("Rupe") violated his constitutional right to be free from cruel and unusual punishment. (Dkt. 1.) The District Judge, in an order dated April 30, 2012, dismissed all defendants except Hoisington and Rupe. (Dkt. 6.) On December 14, 2012, Defendants Hoisington and Rupe filed a motion for judgment on the pleadings or for summary judgment, which is presently before the Court for a report and recommendation. (Dkt. 15, 18.) Plaintiff did not file a response or any direct opposition to the motion. For the following reasons, the Court RECOMMENDS Defendants' motion for summary judgment be GRANTED.

**I.    BACKGROUND**

Plaintiff was an inmate at the Oakland County Jail in Pontiac, Michigan, from November 22, 2011, until June 7, 2012, when he was remanded to the custody of the Michigan Department of Corrections to serve his current prison term. (Dkt. 1, Compl.; Dkt. 15, Def.'s Mot. Summ. J. at 1.) On that day, according to the Verified Complaint, Defendants' affidavits, and a videotape of the incident, a physical altercation occurred between Plaintiff and Defendants Hoisington and Rupe ("Defendants"). This suit centers on that altercation.

The Court finds the following facts are not in genuine dispute.

Plaintiff was "loud, disruptive and uncooperative with the booking process." (Def.'s Mot. Summ. J., Ex. 3, Hoisington Aff. ¶ 5.) Plaintiff was aggressive and non-compliant and made comments such as: "fuck you," and "you can't make me do anything," to deputies working in the area. (*Id*., Ex. 4, Rupe Aff. ¶ 4.) As a result, Plaintiff was isolated in a Behavior Modification Unit (BMU) in order to give him a chance to "cool down" and to keep him from disrupting and/or inciting unrest among other new arrestees in the jail. (Hoisington Aff. ¶ 6, Rupe Aff. ¶ 5.)

Defendants have provided a videotape of what transpired next. (Def.'s Mot. Summ. J., Ex. 7, Video of November 22, 2011 Incident.) It is consistent with the affidavits they provided. (Dkt. 15, Def.'s Mot. Summ. J., Ex. 3 & 4, Hoisington Aff., Rupe Aff.) Plaintiff was being escorted from the BMU to the strip search area by Defendants and another officer. Deputy Rupe touched Plaintiff's left elbow to steer him around a corner. Plaintiff reacted violently to Deputy Rupe's hand being placed on his elbow, so Deputy Hoisington placed his hand on Plaintiff's shoulder in an attempt to secure and guide him to the strip search area. (*Id*. at ¶¶ 8-10, ¶¶ 9-11; Def.'s Mot. Summ. J., Ex. 7.) Plaintiff then flung the boots he was holding in Deputy Hoisington's direction. (*Id*. at

¶ 10, ¶ 11; Def.'s Mot. Summ. J., Ex. 7.) The boots hit Deputy Hoisington and dislodged his glasses. (*Id.* at ¶ 12, ¶ 12.) Deputy Hoisington pushed Plaintiff against the wall in an effort to bring him under control. (*Id.* at ¶ 11, ¶ 13; Def.'s Mot. Summ. J., Ex. 7.)[1] The video shows Plaintiff resisting and the Defendants' attempts to subdue him. Numerous other officers come to the scene to assist in restraining (a resisting) Plaintiff. Eventually, Plaintiff is taken to the ground by the officers. The scene on the video, however, is obstructed by some metal containers. The video then ends. While the video does not clearly reveal any punching or kicking by the deputies, Plaintiff alleges that,

> In fear and extreme pain, I tried to block the repeated blows that w[ere] being deliver[ed] to my head, face, eye, [etc.] . . . by both Deputy Hoisington and Deputy Rupe (another Deputy who joined in on the physical attack inflicted upon me). In the mi[d]st of said Deputies assaulting me, I was pulled into a shower room area where said Deputies stripped me of my clothes. The assault continued, even while I was completely naked.
>
> Next , I was taken to R-6, completely naked, where I was giving some clothes after a wait of 20 minutes.

(Dkt. 1, Compl. 6-7.)

An affidavit from the Health Services Administrator for Correct Care Solutions at the Oakland County Jail, Mark Morrissey, R.N., indicates that Nurse Stetz, who saw Plaintiff at 9:40 p.m. on night of the incident observed: "*area under Inmate Lee's right eye swollen with a cut approximately 1/4" long; bleeding slightly (oozing).*" (Dkt. 15, Def.'s Mot. Summ. J., Ex. 6, Morrissey Aff. ¶ 9) (italics in original). Moreover, Plaintiff stated that night: "*I'll be okay nurse.*

---

[1] The video reveals that Plaintiff's allegation is overstated. Plaintiff suggests that, as soon as he was removed from the BMU and for no reason at all, Deputy Hoisington "violently" grabbed his shoulder, attacked him, and pushed his head into the concrete wall. (Dkt. 1, Compl., ¶ 2.)

*I'll be leaving here tomorrow.*" (*Id*. at ¶ 10) (italics in original). Nurse Stetz cleaned the area, gave Plaintiff ice and told him to lie on his back, and not on his side or stomach. (*Id*. at ¶ 11.) Notes reflect that he was to be monitored. (*Id*.)

At 3:50 the next morning Plaintiff was transported to doctor's hospital where he was evaluated. (*Id*. at ¶ 12.) Plaintiff reported that he was able to see out of his eye "just fine" but reported that the swelling was bothering him. (*Id*.) Plaintiff was given a tetanus shot and derma bond was applied to his laceration. (*Id*.) He was prescribed Ultram for his pain, discharged, and returned to the Oakland County Jail with a diagnosis of "peri-orbital contusion (bruise near the eye)" at 4:30 a.m. (*Id*.)

At 9:30 a.m., Dr. Philip Durocher evaluated Plaintiff and noted swelling, edema, and subconjunctival hemorrhage. (*Id*. at ¶ 13.) A CT-scan was performed. (*Id*. at ¶ 14.) The scan revealed minimal soft tissue swelling and no definite fracture or dislocation. (*Id*.) Plaintiff was discharged with a diagnosis of "peri-orbital contusion" (bruise near the eye) and "subconjunctival hemorrhage" (bleeding under the conjunctiva of the eye). (*Id*.)

X-rays performed on January 5, 2012 and January 23, 2012 were normal. (*Id*. at ¶¶ 15, 16.) According to Morrissey, at no time did Plaintiff appear at the jail clinic with issues related to trouble sleeping, chronic headaches, chronic back pain, depression, or occasional neck pain. (*Id*. at ¶ 18.)

Plaintiff alleges sleeping problems, chronic headaches, chronic back pain, occasional blurred vision in his right eye, depression, occasional neck pain, and that he has been placed in super maximum security. (Dkt. 1, Compl. at 8.)

**II.   ANALYSIS**

   **A.   Legal Standards**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). On a motion for summary judgment, the court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001). The moving party may discharge its initial summary judgment burden by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). If the moving party does so, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The Court must determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury, or whether the evidence is so one-sided that the moving party must prevail as a matter of law. *Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

One other aspect of the governing procedural standard is important here. The typical complaint is not summary judgment evidence. *Hamilton v. Myers*, 281 F.3d 520, 525 (6th Cir. 2002) ("The non-moving party may not rely on his pleadings alone . . . ."). But the same is not true

for a verified complaint, such as Lee's. (*See* Dkt. 1, Compl. at 4 ("I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.").) "[A] verified complaint . . . carries the same weight as would an affidavit for the purposes of summary judgment." *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008). Conclusory assertions, however, even those advanced in the form of a verified complaint, "are not sufficient to show a genuine issue of fact necessary for the denial of summary judgment." *Baker v. Noronha*, No. 12-10642, 2013 WL 639336, *5 (E.D. Mich. Jan. 8, 2013) (quoting *Moore v. Philip Morris Co., Inc.*, 8 F.3d 335, 343 (6th Cir.1993)).

### B. Fourth Amendment Violation

#### 1. The Standard

The Eighth Amendment's ban on cruel and unusual punishment applies to excessive force claims brought by prisoners serving their sentences. *Aldini v. Johnson*, 609 F.3d 858, 864 (6th Cir. 2010). Plaintiff, however, was not convicted at the time of the incident in question. Rather, he was a pre-trial detainee, and, therefore, the Eighth Amendment does not apply. *Watkins v. City of Battle Creek*, 273 F.3d 682, 685 (6th Cir. 2001). In *Aldini*, the Sixth Circuit clarified that during the time an individual is in custody between his arrest and his appearance before a judge, the Fourth Amendment applies. *Aldini*, 609 F.3d at 869. Although Plaintiff characterized his claim as one under the Eighth Amendment, the Court will construe his Complaint to allege that Defendants' actions violated his constitutional right to be free of excessive force under the Fourth Amendment. In doing so, the Court recognizes that a pro se litigant's complaint is to be construed liberally, *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007), and is held to "less stringent standards" than a complaint drafted by counsel. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972).

The Fourth Amendment standard is objective and it is applied without reference to the officer's subjective motivations. *Graham*, 490 U.S. at 394-95, 109 S. Ct. 1865. Courts look to: "the facts and circumstances of each particular case, including (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether he was actively resisting arrest or attempting to evade arrest by flight." *Gaddis v. Redford Twp.*, 364 F.3d 763, 772 (6th Cir 2004) (quoting *Graham*, 490 U.S. at 396.) Further, "evidence related to the severity of a plaintiff's injuries may be relevant in determining the amount of force used." *Turner v. Viviano*, No. 04-70509, 2005 U.S. Dist. LEXIS 35119, at *23 (E.D. Mich. July 15, 2005) (J. Cleland) (citing *Martin v. Heileman*, 106 F.3d 1308, 1311-12 (6th Cir. 1997)). The standard "contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002). A court must recognize that "officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham,* 490 U.S. at 397; 109 S. Ct. 1865.

As the Supreme Court explained, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992) (internal quotation omitted). Thus, "[f]ederal courts have routinely held that a single push, shove, punch, or blow by a prison guard does not rise to the level of a constitutional violation. The same holds true even when the push or shove appears to be unnecessary." *Stanley v. Smith*, No. 2:07-CV-139, 2008 WL 4534434, at *6 (W.D. Mich. Sept. 29, 2008) (citing *Hampton v. Alexander*, No. 95–3457, 1996 WL 40237 (6th Cir. Jan. 31, 1996). Likewise, when a suspect is actively resisting arrest, police officers do not violate

7

the Fourth Amendment by administering force, such as Taser deployments or baton strikes, to subdue the suspect. *See, e.g., Caie v. W. Bloomfield Twp.*, 485 F. App'x 92, 97 (6th Cir. 2012) (officers used reasonable force in tasing a suspect who actively resisted arrest by keeping his arms underneath his body and refused to be handcuffed); *Williams v. Sandel*, 433 F. App'x 353, 363 (6th Cir. 2011) (officers did not use excessive force when they subjected an actively resisting suspect to baton strikes, pepper spray, and thirty-seven Taser deployments); *Williams v. Ingham*, 373 F. App'x 542, 548 (6th Cir. 2010) (no excessive force for tasing suspect who would not comply with officer's requests to move his hands from under his body.)

On the other hand, the use of force has been found to be excessive when a suspect is cooperative or no longer resisting arrest. *See, e.g., Kijowski v. City of Niles*, 372 F. App'x 595, 600 (6th Cir. 2010) (officers violated the Fourth Amendment by tasing wedding guest who was sitting in his truck and not disobeying police commands); *Champion v. Outlook Nashville, Inc.,* 380 F.3d 893, 901 (6th Cir. 2004) (officers used excessive force on a handcuffed suspect who was not resisting arrest when the officers sprayed the suspect with pepper spray and placed substantial pressure on his back while in the prone position).

### 2. No Fourth Amendment Violation

While Plaintiff did not respond to Defendant's motion for summary judgment, the Court will treat Plaintiff's Verified Complaint as an opposing affidavit. *El Bey*, 530 F.3d at 414. For the following reasons, the Court concludes that the Verified Complaint does not create a genuine issue of material fact sufficient to withstand summary judgment.

First, the parties do not dispute that an altercation occurred. Nor does Plaintiff refute that he was resisting Defendants' efforts to subdue him. The disagreement is over whether the force

8

used was "objectively reasonable" under the circumstances. In addition to sworn affidavits, Defendants have offered a video that shows a significant portion of the incident. A video recording of an incident can sometimes be dispositive of a fact dispute. The Supreme Court explained in *Scott v. Harris* that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). Instead, the Court should "view[ ] the facts in the light depicted by the videotape." *Id.* at 381, 127 S. Ct. 1769; *see also Marvin v. City of Taylor*, 509 F.3d 234, 239 (6th Cir. 2007). In some cases, the Sixth Circuit has determined that the existence of a recording of the event makes "the underlying facts of the case . . . undisputed." *Dunn v. Matatall*, 549 F.3d 348, 350 (6th Cir. 2008).

The Court believes that the video corresponds with Defendants' more detailed version of the incident. It is important to note that Plaintiff does not dispute that he was being loud, disruptive and uncooperative during the booking process making it necessary for jail officials to isolate Plaintiff in a BMU (Behavior Modification Unit) in order to keep him from disrupting the other inmates and to keep him from inciting unrest in the jail. The video shows a 42 second clip of Defendants leading Plaintiff from the BMU to an area where strip searches are routinely performed. (Dkt. 15, Ex. 7.) Plaintiff does not refute that he reacted violently to Defendants' attempt to guide him to the strip search area. Plaintiff also does not dispute that he flung his boots which hit Deputy Hoisington in the face dislodging his glasses. Finally, Plaintiff does not dispute that he resisted Defendants' attempts to bring him under control. In sum, nowhere in his Verified Complaint does Plaintiff allege that he did not resist, and the video clearly shows theDefendants are strugglingto

bring Plaintiff under control. On the undisputed record provided to the Court, no reasonable jury could find that the level of force used to subdue the resisting Plaintiff, ultimately resulting in an injury to Plaintiff's eye, constitutes excessive force as a matter of law. *See Bailey v. Golladay*, 421 F. App'x 579 (6th Cir. 2011) (affirming the entry of summary judgment in favor of defendant officers on the force used to subdue and restrain plaintiff and bring him under control); *Thacker v. Lawrence County*, 182 F. App'x. 464 (6th Cir. 2006) (holding that officers did not use excessive force in wrestling to the ground "an upset, loud, and swearing individual who refused to calm down."); *Schliewe v. Toro*, 138 F. App'x. 715 (6th Cir. 2005) (finding officers entitled to summary judgment on excessive force claim where detainee was attempting to escape from the holding area of the police station and resisted officers' attempts to subdue him, "thus justifying the use of at least some force." "While punching someone may not be the best way to prevent his escape, it cannot be said that the blow was objectively unreasonable."); *Banks v. Twardesky*, No. 10-10561, 2011 WL 891181, *2 (E.D. Mich. Mar. 11, 2011) (no reasonable jury could find that the officer's use of a leg strike, pepper spray, and slight punch to subdue a visibly agitated plaintiff was excessive force).

In their affidavits, both Defendants contend that they did not engage in forceful physical contact with Plaintiff once he was on the ground. (Def.'s Mot. Summ. J., Exs. 3 & 4, Hoisington Aff. ¶ 17, Rupe Aff. ¶ 18.) The Court recognizes that Plaintiff's Complaint alleges that "the assault continued[]" when he was taken to a shower room area prior to the strip search. (Compl. ¶6.) But such threadbare allegations cannot establish a genuine issue of material fact. *Baker*, No. 12-10642, 2013 WL at *5; *Moore*, 8 F.3d at 343; *see also Lee v. Ritter*, 2005 WL 3369616 (E.D. Tenn. Dec. 12, 2005) ("plaintiff's vague and conclusory allegations of excessive force, absent any discussion or explanation of the relevant facts . . . does not preclude entry of summary judgement on his

10

excessive force claim."). This issue was also addressed in *Totman v. Louisville Jefferson Cnty. Metro Gov't,* 391 F. App'x 454 (6th Cir. 2010), where the Sixth Circuit found that non-particularized language regarding an excessive force claim failed to raise a genuine issue of material fact. 391 F. App'x at 465 (citing *Schlueter v. S. Energy Homes, Inc.*, 252 F. App'x 7, 9-10 (6th Cir. 2007)). And, even accepting Plaintiff's allegations as true that the "assault continued," the only assault Plaintiff pled is the one the Court has determined does not implicate the Fourth Amendment. The only additional detail that Plaintiff adds to his claim after the video ends is that the officers "stripped [him] of [his] clothes" (Dkt. 1, Compl. at 6); however, the Court finds that there is nothing unreasonable about this conduct as a matter of law as there is no dispute that Plaintiff, as a new detainee, was being taken to be strip searched.

The Court also considers that Plaintiff suffered only an injury to his left eye as a result of the altercation. *Turner*, 2005 U.S. Dist. LEXIS, at *23. The record is undisputed that within 30 minutes of the altercation, a nurse noted a quarter-inch cut above Plaintiff's left eye. (Dkt. 15., Def.'s Mot. Summ. J., Morrissey Aff. at ¶ 9.). The next day Plaintiff was diagnosed with peri-orbital contusion (bruise near the eye) and "subconjunctival hemorrhage" (bleeding under the conjunctiva of the eye). (*Id.* at ¶ 12, ¶ 14.) Follow-up x-rays conducted a month and a half, and two months later were both normal. (*Id.* at ¶ 15, ¶ 16.) In short, Plaintiff's injuries were minor.

For all of these reasons, the Court concludes that no genuine issues of material fact exist on Plaintiff's excessive force claims against Defendants Hoisington and Rupe.

### 3. Immunity

Defendants further ague that they are entitled to qualified immunity. Qualified immunity shields state officials from suits based on their reasonable discretionary acts. *See Pearson v.*

11

*Callahan*, 555 U.S. 223, 231 (2009); *Moldowan v. City of Warren*, 578 F.3d 351, 396 (6th Cir. 2009).  In deciding whether an official is entitled to qualified immunity, a court asks two questions, in any order: (1) whether the plaintiff has shown that the official violated his constitutional rights, and (2) whether those rights were "clearly established" at the time the official acted. *Pearson*, 555 U.S. at 232, 236.  Here, the Court has already concluded that there is no genuine dispute over facts material to whether Defendants violated Plaintiff's Fourth Amendment rights and thus, it is not necessary to discuss the "clearly established" prong.

## III.     CONCLUSION

Accordingly, for the foregoing reasons, the Court Recommends that Defendant's Motion for Summary Judgment be GRANTED.  The Court also Recommends that Plaintiff's Complaint be DISMISSED as to Defendants Hoisington and Rupe.

## IV.     FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97.  Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office.  *See* E.D. Mich. LR 5.1.  A copy of any objections is to be served upon

this magistrate judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

        s/Laurie J. Michelson
        LAURIE J. MICHELSON
        UNITED STATES MAGISTRATE JUDGE

Dated: August 9, 2013

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on August 9, 2013.

        s/Jane Johnson
        Deputy Clerk